IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD J. LEWIS,

    Petitioner,                    2: 06 - cv - 0481 - MCE TJB

    vs.

M. VEAL, et al.,

    Respondents.             <u>ORDER, AMENDED FINDINGS AND</u>

                                        <u>RECOMMENDATIONS</u>

_____/

## I.  INTRODUCTION

Petitioner, Richard Lewis, is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a sentence of twenty-five years to life plus two years after his conviction in 1981 of first degree murder with a firearm enhancement.  Petitioner challenges the September 2004 decision by Governor Schwarzenegger reversing the April 2004 decision by the Board of Prison Terms (the "Board") which had granted Petitioner parole.  Petitioner presents several claims in his petition; specifically:  (1) the Governor did not exercise his discretion in the manner required by California Penal Code § 3041 in reversing the Board ("Claim I"); (2) the Governor exceeded his authority when he denied parole by concluding that Petitioner's commitment offense involved the infliction of torture

1

("Claim II"); (3) the Governor's decision denying parole did not comport with due process because the Governor's decision regarding the circumstances of the commitment offense was not supported in the record ("Claim III"); the Governor's decision on the factors surrounding the commitment offense violated Petitioner's due process rights because it was arbitrary and capricious ("Claim IV"); (5) the Governor's decision violated Petitioner's due process rights because it relied on the unchanging factors of Petitioner's commitment offense ("Claim V"); and (6) the Governor's role in reversing the Board's decision violated the Ex Post Facto Clause ("Claim VI").  Petitioner requests:  (1) an order to show cause; (2) an order to conduct discovery and/or an evidentiary hearing; and (3) an order for supplemental briefing.   For the following reasons, the November 24, 2010 Order, Findings and Recommendations is vacated. Additionally, Petitioner's requests are denied and it is recommended that his federal habeas petition be denied.

## II.  FACTUAL[1] AND PROCEDURAL BACKGROUND

On the evening of July 26, 1980, Richard Lewis murdered 33-year-old Richard Cain by shooting him multiple times with a .22-caliber revolver.

> On the day of the murder, Mr. Lewis' girlfriend told him that Mr. Cain had made unwanted sexual advances at her two months earlier.  Mr. Lewis became very angry and subsequently told his girlfriend's sister, who was married to Mr. Cain at the time, "If you care anything about [Mr. Cain], you better tell him to get out of town."
>
> Afterward, Mr. Lewis and his girlfriend's brother obtained a revolver and some bullets.  After loading the weapon, Mr. Lewis put it under the driver seat of his car.  The two men then went to the home of Mr. Lewis' girlfriend, where they found Mr. Cain.  Mr. Lewis a short while later suggested that the men go out to get some marijuana and Mr. Cain decided to go along.  Mr. Lewis drove instead to a remote location, where he ordered Mr. Cain out of the car and pulled out the revolver.  He then shot Mr. Cain once in the buttocks and once in the chest.  Either before or in between shots, Mr. Cain asked, "What did I do?"  As Mr. Cain lay wounded

---

[1] The factual background of the commitment offense is taken from the Governor's decision which reversed parole which is attached to Respondents' answer at Ex. 3.

>on the ground, Mr. Lewis gave the revolver to his girlfriend's brother and told him to shoot Mr. Cain. The brother refused, and gave the revolver back to Mr. Lewis. Mr. Lewis then walked over to where Mr. Cain lay, lifted Mr. Cain's head by the chin to look him in the face, and said, "Richard Cain, I want you to know who's doing this to you." Mr. Lewis then shot Mr. Cain twice in the side of the head, killing him.

(Resp'ts' Answer, Ex. 3.) In 1981, Petitioner was convicted of first degree murder with a firearm enhancement. On April 20, 2004, the Board conducted a subsequent parole consideration hearing. The Board ultimately concluded that the Petitioner was suitable for parole and would not pose an unreasonable risk of danger to society or a threat to public safety if released from prison. On September 13, 2004, the Governor reversed the Board's decision and found that Petitioner would continue to pose an unreasonable risk of danger to society if paroled at that time.

Petitioner challenged the Governor's decision denying him parole in the Fresno County Superior Court via a state habeas petition. The Superior Court denied Petitioner's state habeas petition on January 6, 2005. In denying the petition, that court stated the following:

>Having reviewed the petition for writ of habeas corpus transferred from the superior court in the County of Marin and filed on December 28, 2004, the court finds no error justifying the requested relief. (Cf. In re Van Houten, (2004) 116 Cal.App.4th 339, In re Smith (2003) 114 Cal.App.4th 343, In re McClendon (2003) 113 Cal.App.4th 315, In re Capistran (2003) 107 Cal.App.4th 1229, and In re Rosenkrantz (2002) 29 Cal.4th 616.) The petition is denied.

(Resp'ts' Answer, Ex. 5 at p. 2.) On March 3, 2005, the California Court of Appeal, Fifth Appellate District summarily denied the petition without discussion or citation. On February 1, 2006, the California Supreme Court summarily denied the petition stating, "Petition for writ of habeas corpus is denied. (See In re Rosenkrantz (2002) 29 Cal.4th 616.)." (Resp'ts' Answer, Ex. 7a at p. 2.)

In March 2006, Petitioner filed the instant federal habeas petition. After an answer and a traverse were filed, Petitioner was appointed counsel in December 2007. On November 5, 2009,

3

Petitioner was released on parole. Petitioner was then ordered to show cause why his habeas petition should not be dismissed in light of his release from prison on parole. Petitioner responded to the order to show cause. On March 10, 2010, this Court concluded that the action would not be dismissed in light of the fact that "plaintiff could still benefit by a favorable ruling that may result in the shortening of his parole."

On November 24, 2010, the undersigned issued Findings and Recommendations which recommended that Petitioner's federal habeas petition be denied. The Petitioner filed objections to the findings and recommendations and the Respondents filed a reply to Petitioner's objections.

### III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d). Nevertheless, where a state court provides no reasoning to support its conclusion as in this case, a federal habeas court independently reviews the record to determine whether the state court was objectively unreasonable in its application of clearly established federal law. See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrande, 538 U.S. 63 (2003). Recently, the

United States Supreme Court reiterated that, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by a showing that there was no reasonable basis for the state court to deny relief." Harrington v. Richter, No. 09-587, – S.Ct. –, 2011 WL 148587, at *9 (Jan. 19, 2011).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. (citations omitted). Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law. See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

IV. DISCUSSION OF PETITIONER'S CLAIMS

A. Claim I

In Claim I, Petitioner asserts that the Governor did not exercise his discretion in the manner required by California Penal Code § 3041. California Penal Code section 3041 sets forth the state's legislative standards for determining parole for life-sentenced prisoners. Section 3041(a) provides that, ""[o]ne year prior to the inmate's minimum eligible release date a panel . .

5

. shall again meet with the inmate and shall normally set a parole release date." Cal. Penal Code § 3041(a). However, subsection (b) states an exception to the regular and early setting of a life sentence term if the Board determines "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that the consideration of public safety requires a more lengthy period of incarceration for this individual." Cal. Penal Code § 3041(b).

Claim I asserts that the Governor misapplied state law. As such, this Claim is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."). Petitioner is not entitled to federal habeas relief on Claim I that the Governor misapplied state law.

B. Claims II, III, IV and V

Claims II, III, IV and V take issue with the Governor's analysis in ultimately determining that Petitioner was not suitable for parole. While Petitioner makes several arguments within these claims, the issues presented fundamentally turn on whether the Governor's decision denying parole comported with due process under the law.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. See Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989). The full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. See Pedro v. Or. Parole Bd., 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. See Greenholtz v. Inmates of Neb.

6

Penal and Corr. Complex, 442 U.S. 1, 16 (1979).

The landscape of a California state prisoner bringing a due process claim for a denial of parole has changed with the recent United States Supreme Court decision in Swarthout v. Cooke, No. 10-333, – S.Ct. –, 2011 WL 197627 (Jan. 24, 2011) (per curiam).  Prior to Swarthout, the Ninth Circuit held that as a matter of state law, denial of parole to California inmates must be supported by at least "some evidence" demonstrating current dangerousness.  See Hayward v. Marshall, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc).  In its decision in Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) rev'd by, Swarthout, 2011 WL 197627, the Ninth Circuit had held that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of the state."

Swarthout reversed the Ninth Circuit in Cooke.  The Supreme Court stated that regarding a California state prisoner's due process rights with respect to parole that:

> Whatever liberty interest exists is, of course, a *state* interest created by California law.  There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.  When, however, a state creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures.  In the context of parole, we have held that the procedures required are minimal.  In Greenholtz, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied.  442 U.S. at 16.  "The Constitution," we held, "does not require more."  Ibid.

Swarthout, 2011 WL 197627, at *2.  The Supreme Court continued by explaining that, "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the petitioners] received, not whether the state court decided the case correctly."  Id. at *3.

Pursuant to the decision in Swarthout, Petitioner is not entitled to federal habeas relief on his due process arguments as espoused in Claims II-V.  In this case, Petitioner was given an opportunity to be heard at his parole suitability hearing.  He also was given a statement of

reasons why parole was eventually denied by the Governor. As the Supreme Court stated in Greenholtz and reaffirmed in Swarthout, that is all that is required under the Federal Constitution. The fact that Petitioner was denied parole by the Governor rather than the Board also does not mean that Petitioner is entitled to federal habeas relief. One of the petitioners in Swarthout (Elijah Gray) had been found suitable for parole by the Board, but the Governor reversed. See 2011 WL 197627, at *2. Even though it was the Governor rather than the Board that found the petitioner unsuitable for parole, the United States Supreme Court made no distinction regarding the due process that was due to a petitioner under such circumstances. While Petitioner raises several issues regarding whether the Governor acted properly in finding that Petitioner was "currently dangerous" under the relevant California parole regulations scheme, a federal habeas court should not reach that issue. As the Supreme Court recently held in Swarthout, "the only federal right at issue is procedural," and the relevant inquiry is the process that the petitioner received, not whether the state courts decided the case correctly. See 2011 WL 197627 at *3. Therefore, Petitioner's due process arguments do not merit federal habeas relief under these circumstances.[2]

---

[2] In Claim II, Petitioner argues that the Governor's finding that the murder involved the infliction of torture was unsupported in the record and violated his Sixth and Fourteenth Amendment rights because it was not specifically found by the jury at trial. In support of this argument, Petitioner cites to Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004). The rule from Apprendi and its progeny is that "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence [than the statutory maximum] must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." Cunningham v. California, 549 U.S. 270, 281 (2007). In California, the sentence for a person convicted of first degree murder is death, life without parole, or twenty-five years to life. See Cal. Penal Code § 190(a). In this case, Petitioner was sentenced to a term of years to life imprisonment, thus, the sentence is a life sentence until Petitioner is found suitable for parole. See In re Dannenberg, 34 Cal. 4th 1061, 1083-84, 23 Cal. Rptr. 3d 417, 104 P.3d 783 (2005) ("[A]n inmate whose offense was so serious to warrant, at the outset, a maximum term of life in prison, may be denied parole during whatever time the Board deems required for 'this individual' by 'consideration of the public safety.'") (quoting Cal. Penal Code § 3041(b)). The Governor's determination that the commitment crime involved the infliction of torture does not increase the penalty for Petitioner's crime, but rather is a decision on whether his already imposed imprisonment should continue and, therefore, Apprendi/Blakely are not applicable to this issue.

C.  Claim VI

In his final Claim, Petitioner asserts an Ex Post Facto Clause violation when the Governor reversed his parole grant.  Petitioner was convicted in 1981.  At that time, California law provided that the Board had sole responsibility for deciding whether inmates were suitable for parole.  In 1988, California voters approved Proposition 89 which provided review of a parole decision by the Governor.  Petitioner asserts that because his conviction occurred before the passage of Proposition 89, the Governor's subsequent denial of his parole in 2004 violated the Ex Post Facto Clause.

The Ex Post Facto Clause applies to criminal legislation that effects an increase in criminal punishment, criminalizes conduct that was not previously criminal or requires proof for conviction of an offense that was previously required.  See Collins v. Youngblood, 497 U.S. 37, 42 (1990).  In California Department of Corrections v. Morales, 514 U.S. 499, 514 (1995), the Supreme Court stated that without evidence that the new law substantively changed the definition of criminal conduct or altered the standards of parole eligibility, it "created only the most speculative and attenuated risk of increasing the measure of punishment."

In a factually similar case to the case at bar, the Ninth Circuit rejected an argument by a petitioner that the California Governor's reversal of the Board's decision granting parole violated the Ex Post Facto Clause.  See Johnson v. Gomez, 92 F.3d 964 (9th Cir. 1996).  Ultimately, the Ninth Circuit found as follows:

> In this case, Johnson is similarly unable to demonstrate that an increase in his punishment actually occurred, because, like the petitioner in Morales, he had not been granted parole under the old law.  Under the old law, BPT's decision would have been subject to no review.  Johnson's case is like Dobbert [v. Florida 432 U.S. 282 (1977)], where the petitioner could only speculate whether the jury would have imposed a life sentence had it possessed the final power to decide.  Here, because the BPT's parole decision is not final until after the expiration of the thirty-day gubernatorial review period, it cannot be said with certainty that the BPT would have granted Johnson parole had it possessed final review authority.  Johnson argues that, unlike the administrative convenience purpose of the law in Morales, the purpose and effect of the law here is to

>lengthen prison terms by making it more difficult for convicted murderers with indeterminate sentences to be released on parole. However, the law itself is neutral inasmuch as it gives the governor power to either affirm or reverse a BPT's granting or denial of parole. Moreover, the governor must use the same criteria as the BPT. The law, therefore, simply removes final parole decisionmaking authority from the BPT and places it in the hands of the governor. We cannot materially distinguish this change in the law from that at issue in Mallet v. North Carolina, 181 U.S. [589,] at 590, 21 S.Ct. [730,] at 731. In Mallet, the Court found no ex post facto violation where the new law allowed for higher court review of intermediate court decisions, even though the petitioner would have been entitled to a final intermediate court decision at the time of his crime. We therefore conclude that the application of Proposition 89 to authorize the governor's review of Johnson's grant of parole did not violate the Ex Post Facto Clause.

Id. at 967 (internal citations omitted).

Petitioner's arguments are similar to those that were rejected in Johnson. The Governor's review is based on the same criteria and record used by the Board. The additional layer of review is neutral and does not, it and of itself, increase Petitioner's punishment.

However, Petitioner also cites to Garner v. Jones, 529 U.S. 244 (2000) in support of his ex post facto argument. Johnson was decided before the United States Supreme Court decided Garner. In Garner, the Supreme Court addressed an as-applied ex post factor challenge to the "retroactive application of a Georgia law permitting the extension of intervals between parole considerations." Id. at 246. In that case, the Court recognized that the "disadvantage" with respect to an ex post facto violation can come from the terms of the statute themselves or from the statute's application to a particular defendant's sentence. See id. at 255. The Court stated that the relevant inquiry is that "[w]hen the rule does not by its own terms show a significant risk, the [petitioner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." Id. It determined that the petitioner "must show that *as applied to his own sentence* the law created a significant risk of increasing his punishment." Id. at 255 (emphasis added). However, "[a]bsent a demonstration to the contrary,

10

we presume the Board follows its statutory commands and internal policies in fulfilling its obligations." Id. at 256. Thus, as the United States Court of Appeals for the District of Columbia has noted:

> Garner outlines two ways in which "significant risk" can be established by a petitioner. First, it can be established if there are facial distinctions between old and new parole/reparole regulations. Second, "when the rule does not by its own terms show a significant risk," a claimant may also meet this burden "by [introducing] evidence drawn from the rule's *practical implementation by the agency* charged with exercising discretion, that its retroactive application *will result in a longer period of incarceration than under the earlier rule.*" The controlling inquiry is one of practical effect.

Fletcher v. Reilly, 433 F.3d 867, 877 (D.C. Cir. 2006) (emphases in original and citations omitted).

Petitioner has not overcome the presumption that the Governor followed the "statutory commands and internal policies in fulfilling [his] obligations." Garner, 529 U.S. at 256. In this case, the Governor's reversal indicates that he considered petitioner's suitability for parole in accordance to the regulations and statutory commands. While Petitioner cites to several figures reflecting the Governor's high reversal rate with respect to when the Board grants parole, it does not show that the Governor did not follow his respective commands in this case. See, e.g., Hairston v. Kane, Civ. No. 06-1517, 2009 WL 773431, at *12 (N.D. Cal. Mar. 29, 2009) ("The Governor's reversal reflects individualized consideration of petitioner's suitability for parole according to statutory commands and regulations in fulfilling his obligation to review decisions of the Board . . . the authority to review Board decisions granted to the Governor by Proposition 89 did not violate the Ex Post Facto Clause."); Seiler v. Brown, Civ. No. 04-2911, 2007 WL 2501518, at * 5 (N.D. Cal. Aug. 30, 2007) ("Petitioner has not overcome the presumption that the Governor followed the statutory commands and internal policies in fulfilling [his] obligations. He has said that the governor['s] . . . tough on crime political stance . . . [has] result[ed] in the reversal of all but eight (8) out of approximately three hundred and fifty (350)

findings of parole suitability by the Board of Prison Terms. This . . . reversal rate does not show with specific facts and details that in petitioner's case the Governor did not follow the statutory commands and internal policies in fulfilling his obligation to review decisions of the BPT."). Thus, for the foregoing reasons, Petitioner is not entitled to federal habeas relief on Claim VI.

## V.  PETITIONER'S REQUESTS

### A.  Request for Order to Show Cause

Petitioner requests an order to show cause in his petition. (See Pet'r's Pet. at p. 67.) Respondent answered the petition on June 28, 2006. Accordingly, Petitioner's request for an order to show cause is denied as moot.

### B.  Request to Conduct Discovery

In his traverse, Petitioner requests discovery. (See Pet'r's Traverse at p. 23.) Parties to a habeas proceeding are not entitled to discovery as a matter of course. See Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rather, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 cases; see also Bracy, 520 U.S. at 904. Good cause is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Id. at 909-09 (internal quotation marks and citation omitted); see also Pham v. Terhune, 4900 F.3d 740, 743 (9th Cir. 2004). A request for discovery "must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6(b), Rules Governing § 2254 Cases.

In this case, Petitioner fails to show good cause to warrant his request for discovery. He fails to include any proposed interrogatories or any request for documents. This request is denied.

### C.  Request for an Evidentiary Hearing

Next, Petitioner requests an evidentiary hearing. Pursuant to 28 U.S.C. § 2254(e)(2), a

district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citations omitted). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

In this case, an evidentiary hearing is not warranted. Petitioner failed to demonstrate that he has a colorable claim for federal habeas relief for the reasons stated in supra Part IV.

D.  Request for Supplemental Briefing

On December 5, 2008, Petitioner requested supplemental briefing in light of the California Supreme Court's decision in In re Lawrence. This court will not allow piecemeal filing of supplemental briefs in this action. The applicability of In re Lawrence in this federal habeas case has been alleviated by the United States Supreme Court decision in Swarthout. The request is denied.

VI.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The November 24, 2010 Order, Findings and Recommendations is hereby VACATED;
2. Petitioner's request for an order to show cause is DENIED AS MOOT;
3. Petitioner's request to conduct discovery is DENIED;
4. Petitioner's request for an evidentiary hearing is DENIED; and
5. Petitioner's request for supplemental briefing is DENIED.

IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: February 3, 2011

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE